```
UNITED STATES DISTRICT COURT          FOR ONLY PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
```

SHARON WILKINS,

                       Plaintiff,                     MEMORANDUM
    -against-                                              AND ORDER
                                                          08-CV-4020 (JG)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
-------------------------------------------------------x

A P P E A R A N C E S :

       CHRISTOPHER JAMES BOWES, ESQ.
           54 Cobblestone Drive
           Shoreham, NY 11786
           *Attorney for Plaintiff*

       BENTON J. CAMPBELL
           United States Attorney
           Eastern District of New York
           271 Cadman Plaza East
           Brooklyn, NY 11201
      By:   Karen T. Callahan
           Assistant United States Attorney
           *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        On March 28, 2006, plaintiff Sharon Wilkins filed an application for Supplemental Security Income ("SSI"), alleging that she was disable due to cervical radiculopathy[1] and asthma. Wilkins's application was denied on April 11, 2005, and she requested a hearing before an administrative law judge ("ALJ"). Wilkins was represented by

---

[1] Radiculopathy refers to "any pathological condition of the nerve roots." Medline Plus, http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

counsel at the December 11, 2007 hearing before ALJ Hazel Strauss. On February 14, 2008, the ALJ concluded that Wilkins was not disabled within the meaning of the Social Security Act ("the Act") because she remained able to perform substantial gainful work that exists in the national economy. The Appeals Council denied Wilkins's request for review on May 2, 2008. The adverse decision thus became the decision of the Commissioner of Social Security ("Commissioner").

Wilkins appeals that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Based upon the record before the Commissioner, the parties have cross-moved for judgment on the pleadings. I heard oral argument on May 8, 2009.

Because the ALJ erroneously disregarded Wilkins's testimony about her symptoms on the ground that it was incredible, I grant Wilkins's cross-motion for judgment on the pleadings, deny the defendant's motion, and remand for further proceedings.

BACKGROUND

A.   *Wilkins's Medical History*

Wilkins was born in 1959. Beginning in 2002, she began to experience pain radiating from her neck into her right arm. She was evaluated by Dr. Mitchell E. Levine, a neurosurgeon, on June 23, 2003. Although an electromyogram ("EMG") demonstrated cervical radiculopathy bilaterally, a previous MRI showed no significant nerve root entrapment that would account for Wilkins's severe pain. Administrative Record ("Tr.") at 91. Levine ordered a follow-up MRI, in which the C4-5 disc in Wilkins's spine was "demonstrated." Tr. 90. Levine opined that this disc was "central and could be accounting for the majority of [Wilkins's]

2

symptomatology." *Id.* He recommended an anterior cervical diskectomy, fusion, and plating, *id.*, which was performed on September 25, 2003. *Id.* at 92.

On October 13, 2003, Dr. Levine reported that Wilkins was doing well following the surgery. She had a full range of motion in her neck and no complaints of pain in her arm. Levine recommended that she continue to wear a neck collar. *Id.* at 89. On November 24, 2003, Levine reported that Wilkins was doing "very nicely" and that an x-ray of her cervical spine looked excellent. *Id.* at 88. Wilkins complained of neck spasm and pain in her right shoulder, and Levine noted a significant paracervical spasm on the right and pain when elevating her arm. *Id.* On December 1, 2003, Dr. Levine reviewed another x-ray and noted that it appeared "perfectly fine." *Id.* at 87. Wilkins continued to complain of shoulder pain, and Levine noted that she demonstrated pain on abduction and rotation of the shoulder. He suspected "some concomitant shoulder pathology" and referred Wilkins to Dr. James Henry for evaluation of her shoulder. *Id.* The record does not reflect the result, if any, of this referral.

On January 9, 2006, Wilkins complained to Menashe Newhouse, a registered physician's assistant, of ongoing right shoulder pain. Newhouse renewed a prescription for Tylenol #4. Tr. 118-20. She also complained of neck pain to Dr. Kyi Yu, a general practitioner, on February 13, 2006. Yu diagnosed her with radiculopathy at the C4-5 disc, continued her Tylenol #4 prescription, and recommended a neurosurgical consult. *Id.* at 123. Wilkins returned to Dr. Yu with similar complaints of pain on March 7, 2006, and requested "a shot." *Id.* at 122. Yu noted decreased range of motion in her neck and pain on palpation and spasm of the trapezius muscles. Yu diagnosed osteoarthritis of the cervical spine and gave Wilkins a 60mg injection of Toradol. During this month, Wilkins filed her disability claim.

3

On April 11, 2006, Wilkins was seen in the orthopedics department at St. John's Hospital with complaints of right-sided back pain radiating down her arm. She told Dr. Imran Karim that her pain was worsening and that she could not sleep on her right side. Karin observed that Wilkins could not turn her head to the right, that her right shoulder was lower than her left and tender to the touch, and that she had a decreased range of motion in her shoulder and elbow. Karim ordered an x-ray and referred Wilkins to Dr. Levine. Tr. 112. The x-ray appeared normal, *id.* at 104, and Dr. Levine recommended another MRI and x-ray on May 1, 2006. *Id.* at 92. The x-ray revealed anterior plate and screw fixation at the C4-C5 vertebral bodies and disc narrowing at C5-6 with multilevel spondylosis[2] of C5-6 and C6-7, as well as posterior joint hypertrophy at C5-6. Tr. 113. The MRI revealed central disc bulges at C2-3, very minimal smooth disc bulges at C3-4, bilateral uncovertebral joint hypertrophy at C4-5, a fused disc at C5-6 with a 3-millimeter broad-based disc herniation, and anterior osteophyte spondylosis and bilateral uncovertebral joint hypertrophy with associated disc protrusions at the C6-7 level. Tr. 124.

On August 6, 2006, Wilkins complained of left and right shoulder pain to Dr. Yu, who advised her to follow up with her neurosurgeon. Wilkins made similar visits on August 23 and August 30, at which time Yu made various adjustments to her pain medication.

Dr. Yu competed a medical assessment of Wilkins's ability to do work on September 22, 2006. Yu indicated that, due to cervical spine fusion and C5-6 spondylosis and the severe pain it caused, Wilkins could only lift two pounds during an eight-hour work day. He also indicated that radiculopathy limited Wilkins's ability to reach, handle, feel, push, and pull.

---

[2] Sponylosis refers to "any of various degenerative diseases of the spine."

During 2007, Wilkins made further complaints of pain to Dr. Yu, who made several adjustments to her pain medications. She also received regular injections of Toradol for her pain. On September 10, 2007, Yu noted that "at the present time no neurosurgeon [is] willing to do surgery again for [Wilkins's] condition." Tr. 147.

On June 13, 2008, at the request of the Commissioner, Wilkins was examined by Dr. Steven Calvino. Dr. Calvino observed that Wilkins's finger dexterity was intact and her grip strength in both hands was normal. He also observed that Wilkins had a decreased range of motion in her right shoulder due to pain. He ultimately diagnosed "failed neck surgery syndrome" and right knee pain, and opined that Wilkins had moderate limitations for heavy lifting, frequent squatting, climbing, or bending, and no restrictions for standing, walking, sitting, or fine motor activities of the bilateral upper extremities. Tr. 130.

B.  *The Administrative Hearing and the ALJ's Decision*

At the hearing, Wilkins testified that she lived with her son (age 29) and daughter (age 17) in an apartment in Queens. Her daughter performs most of the cooking and cleaning in the household, and that her children assist her with some dressing and personal hygiene tasks. She occasionally shops with her son or a friend, visits her sister twice a month, and usually spends her days watching television, listening to the radio, or reading. Wilkins claimed that she was unable to work due to her pain, could not lift with her right arm, and also had problems using her left hand.

Vocational Expert Andrew Pasternak also testified at the hearing. The ALJ asked Pasternak to hypothesize an individual the same age as Wilkins, who was limited to light work, needed to avoid using her right dominant upper extremity, and could only occasionally squat,

5

climb, or bend, but could perform fine motor activities with her upper extremities and lift with her left hand and arm. Pasternak testified that such an individual could work as a ticket taker, office helper, assembler, or surveillance system monitor.

> The ALJ concluded that Wilkins
>
> has the residual functional capacity (RFC) to perform light work, lifting/carrying 20 pounds occasionally, 10 pounds frequently; can stand/walk about 6 hours and can sit about 6 hours in an 8 hour work day, except she must avoid using the dominant right upper extremity for lifting/carrying, but can use bilateral upper extremities for fine motor activities; she should avoid environmental irritants . . . . [and] unprotected heights. She can squat, bend, stoop, kneel, balance, crouch and crawl only occasionally.

Tr. 14. In reaching this conclusion, she found "that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 15. She also declined to give "significant weight" to the RFC assessment of Dr. Yu, noting that there was "no indication in the objective record" to support Yu's lifting limitation, that Wilkins had no impairment in her left upper extremity, and that Yu's limitations "are inconsistent with the opinion of Dr. Calvino. " *Id.* Based on these limitations and Pasternak's testimony, the ALJ concluded that Wilkins was capable of performing work which exists in the national economy and therefore not disabled under the Act.

## DISCUSSION

A.  *Standard of Review*

To award disability benefits, the Commissioner must find that, "by reason of [a] medically determined physical or mental impairment . . . which has lasted . . . for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), Wilkins "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in

6

any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d) (2)(A).[3]

On review, the question presented is whether the ALJ's decision that Wilkins is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31(internal quotation marks omitted).

The Commissioner employs a five-step analysis in evaluating claims for disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform h[er] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . . .

---

[3] Substantial work activity is defined as work that involves doing significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id*. Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id*.

7

> [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see* 20 C.F.R. § 404.1520 (2005).

B.     *The ALJ's Adverse Credibility Finding Regarding Wilkins's Subjective Symptoms of Pain*

Wilkins argues, in relevant part, that the ALJ's determination is not supported by substantial evidence because she erroneously disregarded Wilkins's testimony as incredible. In resolving whether a claimant is disabled, the Commissioner must consider the claimant's own "statements about [his or her] symptoms, such as pain, and any description [he or she] . . . may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work." *See* 20 C.F.R. § 416.929(a). Indeed, the regulations acknowledge that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ shall] ... carefully consider any other information [that the claimant] may submit about [her] symptoms." 20 C.F.R. § 416.929(c)(3). However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Davis v. Massanari*, No. 00 Civ. 4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001). In order to assess the scope of any functional limitations resulting from a medically determinable impairment, the Commissioner must evaluate the intensity and persistence of the claimant's subjective symptoms, including pain, and consider the claimant's credibility in light of "all of the available

evidence." *Id.* (citing 20 C.F.R. § 416.929(c)(1)); *Sarchese v. Barnhart*, No. 01-CV-2172, 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002).

The regulations list seven factors that "will" be considered in evaluating a claimant's subjective complaints: (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual received or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

Because the ALJ has discretion to evaluate the claimant's credibility in this regard, "[i]f the ALJ's decision to ignore plaintiff's subjective complaints of pain is supported by substantial evidence, then [the federal court] must uphold that determination." *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003). However, the ALJ must set forth his or her reasons for discounting a plaintiff's subjective complaints with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Miller v. Barnhart*, No. 02 Civ. 2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003) (quotations and citation omitted).

In this case, the ALJ opined that "the claimant's statements concerning the intensity, persistence and limiting effect of [her claimed] symptoms are not entirely credible."

9

Tr. 15. However, the only explicit support for this conclusion is the ALJ's later statement that "[c]laimant's testimony that she does no chores except to shop with her son lacks credibility in light of her prior statement to the consultant," *id.* at 16,[4] apparently referring to the statements she made to Dr. Calvino. Accordingly, to assess the legitimacy of the ALJ's credibility findings, a close examination of the statements Wilkins made about cooking and cleaning is required.

At the hearing, the ALJ made the following inquiries regarding cooking and cleaning:

> Q. . . . Do you cook?
> A. My daughter does it.
> Q. Do you do any sweeping up?
> A. No.
> Q. Do you do any, do you do any mopping?
> A. No.
> Q. Do you wash dishes?
> A. No, she does that or my son.
> Q. Do you make your bed?
> A. I pull the cover up on it because I, I stay, I, I stay in my room most of the day anyway. . . .
> Q. Do you launder your clothes?
> A. My daughter -- I have a washing machine and she does the laundry.

Tr. 216-218. Dr. Calvino reported that "[t]he claimant states that she is able to cook occasionally. She is able to clean occasionally. She has her daughter do the laundry and shopping. The claimant is able to shower and dress herself with some help occasionally. Her activities include watching TV and reading." Tr. 128.

Comparing these two narratives provides no reason to doubt Wilkins's credibility. As Wilkins observes, the hearing testimony occurred over eighteen months after she saw Dr.

---

[4] The government insists that this inconsistency "was but one factor the ALJ considered in assessing plaintiff's credibility." Def. Reply Mem. 3. Although the ALJ may have had other reasons not to credit Wilkins' testimony, I cannot discern those reasons from her decision.

Calvino, so it is possible that her routine had changed in the interim, a possibility the ALJ did not explore. More importantly, statements that the claimant did not, as a matter of routine, perform specific cleaning tasks are not inconsistent with a statement that the claimant is occasionally capable of performing cleaning tasks. Accordingly, the ALJ's finding regarding Wilkins's credibility lacks support in the record. And because the ALJ improperly disregarded Wilkins's complaints of severe pain, I cannot conclude that her conclusion as to Wilkins's residual functional capacity was supported by substantial evidence. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ's findings of fact not conclusive "when derived by ignoring evidence"). Accordingly, remand for a determination of the significance of Wilkins's subjective complaints is required.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is denied and plaintiff's cross-motion is granted. The case is remanded for further proceedings consistent with this opinion.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 8, 2009
     Brooklyn, New York